**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:

| | |
|---|---|
| MARY ANNE TORONGO, on behalf of herself and other similarly situated individuals, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| ROBERT G. ROY, D.V.M., M.S., P.A., a Florida professional association d/b/a PALM BEACH VETERINARY SPECIALISTS, | ) ) ) ) |
| Defendant. | ) ) |

**CLASS ACTION**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT, 15 U.S.C. § 1681c(g)**

***DEMAND FOR JURY TRIAL***

Plaintiff, MARY ANNE TORONGO ("Plaintiff"), on behalf of herself and other similarly situated individuals, alleges the following, in relevant part, upon information and belief and her own personal knowledge.

### *NATURE OF THE CASE*

1.      This class action complaint is based upon Defendant's violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq., as amended* (the "FCRA"). Specifically, this action is based upon Section 1681c(g) of the FCRA, which states that, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

2.      Despite the clear language of the statute, Defendant chose not to comply with the FCRA. As such, all consumers who purchase goods and services from Defendant using a credit or debit card suffered violations of Section 1681c(g), have been uniformly burdened with an elevated risk of identity theft, and are entitled to an award of statutory damages.

### *JURISDICTION AND VENUE*

3.     This Court has jurisdiction under 15 U.S.C. § 1681p, 28 U.S.C. § 1331, and 28 U.S.C. § 1337 because the claims in this action arise under violation of a federal statute.

4.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here. Defendant does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

### *PARTIES*

5.     Plaintiff, MARY ANNE TORONGO ("Plaintiff") is a natural person, who resides in the State of Florida, County of Palm Beach.

6.     Defendant, ROBERT G. ROY, D.V.M., M.S., P.A., d/b/a PALM BEACH VETERINARY SPECIALISTS ("Defendant"), is a Florida professional association whose principal office is located at 3417 NE 30th Avenue, Lighthouse Point, FL 33064, and whose registered agent for service of process in the State of Florida is Drennen L. Whitmire Jr. at 660 U.S. Highway One, 3rd Floor, North Palm Beach, FL 33408.

7.     Defendant is a business that offers specialty services in veterinary surgery, internal medicine, neurology, neurosurgery, cardiology, oncology, ophthalmology, radiology, advanced diagnostic imaging, animal blood and tissue banking services, and 24-hour emergency/critical care.[1]

### *FACTUAL ALLEGATIONS*

#### *A. Statutory Background*

8.     In 2003, FACTA was enacted by Congress and signed into law. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

9.     One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt

---

[1] Source: http://www.palmbeachvetspecialists.com (last visited on October 16, 2015).

provided to the consumer during a point-of-sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

10.   Codified at 15 U.S.C. § 1681c(g), this provision states the following:

*"Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."*

(hereinafter, the "Receipt Provision").

11.   After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions by no later than December 4, 2006.

12.   The requirement was widely publicized among retailers and the Federal Trade Commission.

13.   For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

14.   Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

15.   The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

3

16.     For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

17.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed a law absolving all *past* violations of FACTA. *See* The Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 (2008).

18.     Importantly, the Clarification Act did not amend FACTA to allow publication of more than the last 5 digits of the card number. Instead, it simply provided amnesty for past violators up to June 3, 2008.

19.     Card processing companies continued to alert merchants of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN **or the card expiration date on any cardholder receipt.** (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtml for more information on the FACTA.)
>
> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.
>
> *See* Visa Alert attached hereto as Exhibit A.

20.     Not only was Defendant informed they could not print more than the last five numbers, they were contractually prohibited from doing so. Defendant accepts credit and debit

4

cards from all major issuers; these companies set forth requirements that merchants, including

Defendant, must follow, including FACTA's redaction and truncation requirements.

21.     As noted above, the processing companies have required that the credit card account

number be redacted since 2003 and still require it.  For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit B, attached hereto.

22.     Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, **must not include the Card expiration date.** In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C, attached hereto.

23.     According to data from the Federal Trade Commission's 2012 Consumer Sentinel Network report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area, with 645.4 complaints per 100,000 people.[2]

24.     So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined together to set-up a free website (http://www.annualcreditreport.com) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

---

[2] http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (Last accessed: August 28, 2014).

25.     FACTA clearly prohibits the printing of more than the last 5 digits of a consumer's credit or debit card number and the expiration date to protect persons from identity theft.

### B. *Plaintiff's Factual Allegations*

26.     On or about August 25, 2015, Plaintiff brought her dog, Jasper, to Defendant's facility for emergency veterinary care. Upon arrival, Defendant performed emergency medical treatment on Jasper, which included an examination, radiography and a pain medication injection.

27.     After the medical treatment Jasper was allowed to return home. Once home, his health deteriorated rapidly forcing Plaintiff to return to Defendant's facility to seek further help. Defendant re-evaluated Jasper and recommended surgery as the best course of action.

28.     Because Plaintiff could not cover the costs of the surgery, Defendant recommended that she apply for a credit card from Care Credit; a company that specializes in medical loans for pets. In order to facilitate the credit card loan process, Defendant ushered Plaintiff to a separate room where she applied for credit via computer.

29.     Once financing was secured from Care Credit, Defendant performed surgery on Jasper and kept him at the facility for approximately five days. Plaintiff then brought Jasper home where his condition worsened. After several days in severe pain, Plaintiff felt that the only humane option left was to have Jasper euthanized.

30.     To pay for the veterinary services received on August 25, 2015, Plaintiff provided Defendant with her credit card. In return, Defendant gave Plaintiff an electronically printed receipt. This receipt included the last four digits of Plaintiff's credit card and the expiration date, in direct violation of the Receipt Provision of FACTA.

31.     Sometime after Plaintiff used her credit card to pay for her pet's veterinary care, she received a fraudulent activity alert on her account. Upon information and belief, the fraudulent activity may have been a result of the August 25, 2015 receipt printed by Defendant in violation of FACTA.

### *C. Defendant's Misdeeds*

32.     At all times relevant herein, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

33.     At all times relevant herein, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was in willful and/or reckless disregard for federal law and the rights of the Plaintiff.

34.     It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – i.e., immediately upon receipt of a credit or debit card payment.

35.     Consistent with Defendant's policy and procedure, Defendant knowingly, intentionally, and/or with reckless disregard includes credit and debit card expiration dates on its electronically printed receipts.

36.     Along with the expiration date, the receipt generated at the point of sale also displays certain other sensitive information, including the consumer's name, address, telephone number, type of credit card and date of service.

37.     The Defendant cannot electronically store an image of the receipt (bearing the expiration date) unless the software utilized by Defendant is specifically programmed to reveal the expiration date on the receipt generated at the point of sale. Unlike the storage of credit card account numbers, swiping a card does not record the credit card's expiration date.

38.     The expiration dates are not printed by accident. Upon information and belief, the equipment and software used to print the receipts must be programmed to display certain information, and likewise, programmed not to display certain information.

39.     Upon information and belief, Defendant has engaged in a practice of predatory billing wherein a consumer is required to pay a deposit before their pet receives medical treatment,

then once diagnosed and under Defendant's custody and control, the consumer is given an exorbitant bill for further medical treatment.

40.     Upon information and belief, the general sequence of events is as follows: (1) in a time of need, a consumer brings their sick or injured pet to Defendant's veterinary facility for help; (2) an employee of Defendant requires that a deposit be charged to the consumer's credit or debit card as a prerequisite to medical treatment for their sick or injured pet; (3) the consumer's credit or debit card information is electronically recorded in Defendant's database; (4) the consumer is then given an inflated bill for medical treatment to their pet; and (5) once the consumer's pet is ready to leave Defendant's facility, the remaining balance must be paid before the pet is discharged.

41.     Numerous people have complained about Defendant's unscrupulous billing practices. *See* Exhibit D, attached hereto.

42.     Defendant cannot subsequently charge a consumer's credit or debit card, unless it possesses two critical pieces of information, to wit: the credit or debit card account number and the credit or debit card expiration date.

43.     Upon information and belief, Defendant engages in the practice of capturing credit or debit card expiration dates, so that it may charge a consumers' credit or debit card before releasing a pet to its owner.

44.     Irrespective of Defendant's credit or debit card billing scheme, it is clear that Defendant possessed some level of knowledge regarding FACTA's requirements as Defendant complied with the credit card number redaction requirement, presumably because it had already stored the credit card account number in electronic format.

45.     Further evidencing that Defendant possessed some level of knowledge regarding FACTA, Defendant generates and issues two receipts at the point of sale. One of the receipts Defendant generates is FACTA compliant while the second receipt is not.

46.     Upon information and belief, Defendant has in its (exclusive) possession other documents which would tend to shed light on Defendant's willful disregard of FACTA, including but not limited to policies and procedures manual(s) regarding credit or debit card transactions or internal privacy guidelines concerning (protected) consumer information.

47.     Notwithstanding the fact that it has had years to comply, Defendant continues to issue receipts at point of sale transactions, which contain the expiration date of credit or debit cards, in direct violation of the Receipt Provision of the FCRA.

48.     Notwithstanding the Receipt Provision, Defendant continues to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts, which do not comply with the FCRA.

49.     Notwithstanding the Receipt Provision and the fact that it had years to comply, Defendant continues to act in conscious disregard for the rights of others.

50.     In sum, Defendant, in the name of profit, knowingly and intentionally violated the Receipt Provision of FACTA, in conscious or reckless disregard for the rights and privacy concerns of others, and in doing so, committed willful violations of the FACTA provision of the FCRA. *See Reynolds v. Hartford Financial Services Grp.,* 435 F.3d 1081, 1098 (9th Cir. 2006).

## ***CLASS ACTION ALLEGATIONS***

51.     This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required:

> *(i) All persons in the State of Florida (ii) who, when making payment for veterinary services to Defendant, (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed the expiration date of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.*

52.     The named Plaintiff falls within the Class definition and is a member of the class. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any

member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

## A.   *Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.*

53.   The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant.

54.   Defendant touts itself as "the largest, dedicated, technologically advanced specialty referral hospital and emergency/critical care facility of it type."[3]  Plaintiff states, upon information and belief, that Defendant provides services to hundreds of consumers on a monthly basis, at a minimum, from its West Palm Beach, Florida location. Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

55.   There are common questions of law and fact, which predominate over any questions affecting only the individual members of the classes. The wrongs alleged against Defendants are statutory in nature and common to each and every member of the respective classes.

56.   This suit seeks only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

57.   There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class

---

[3] Source: http://www.palmbeachvetspecialists.com (last visited on October 16, 2015).

10

predominate over questions that may affect individual Class members, including the following:

        a.   Whether, within the two years prior to the filing of this Complaint, Defendant and/or their agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which the expiration date of the card was printed;

        b.   Whether Defendant's conduct was willful and reckless;

        c.   Whether Defendant's conduct was negligent;

        d.   Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

        e.   Whether Defendant should be enjoined from engaging in such conduct in the future.

58.    As a person that utilized Defendant's veterinary services and received a receipt upon which the expiration date of her credit card was printed, Plaintiff is asserting claims that are typical of the proposed Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

59.    The principal question is whether the Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether it is Defendant's policy and practice to provide such electronically printed receipts to all consumers that obtain veterinary services using a credit or debit card and whether this policy and practice constitutes willful noncompliance of the FCRA.

60.    Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant would undoubtedly continue such illegal conduct. Because of the size of the individual Class members' claims, few Class members could afford to seek legal redress for the wrongs complained of herein.

61.     Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

62.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and Florida law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for a violation of the statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

### COUNT I – VIOLATIONS OF 15 U.S.C. § 1681c(g)

63.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

64.     15 U.S.C. §1681c(g) states as follows:

> *"Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."*

65.     This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

66.     Defendant employs the use of said Devices for point of sale transactions at its West Palm Beach, Florida location.

67.     On or before the date on which this complaint was filed, Plaintiff and members of the Class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

68.     At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

69.     Notwithstanding the three- year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision, knowledge of the Receipt Provision and FACTA as a whole, Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

70.     In the alternative, Defendant negligently violated and continues to violate the FCRA and the Receipt Provision.

71.     As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the Class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and members of the Class pursuant to 15 U.S.C. § 1681n for statutory damages, actual damages, punitive damages, attorney's fees and costs.

WHEREFORE, Plaintiff, MARY ANNE TORONGO, respectfully requests that this Court enter judgment in her favor and against Defendant, ROY G. ROY, D.V.M., M.S., P.A., for:

a.   Statutory damages;

b.   Actual damages;

c.   Punitive damages;

d.   Attorneys' fees, litigation expenses and costs of suit; and

e.   Such other or further relief as the Court deems proper.

### *JURY DEMAND*

**Plaintiff demands a trial by jury on all counts.**

Respectfully submitted,

By: */s/ Christopher W. Legg*
Christopher W. Legg, Esq.
Florida Bar No.: 44460
CHRISTOPHER W. LEGG, P.A.
3837 Hollywood Blvd., Ste. B
Hollywood, FL 33021
Phone: 954-962-2333
Fax: 954-927-2451

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Email: ChrisLeggLaw@gmail.com

*Attorney for Plaintiff*