UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:15-cv-81490-DMM

MARY ANNE TORONGO, on behalf of
herself and others similarly situated,

    Plaintiff,

v.

ROBERT G. ROY, D.V.M., M.S., P.A., a
Florida professional association d/b/a PALM
BEACH VETERINARY SPECIALISTS,

    Defendant.
_____/

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
FOR RELIEF AND FOR LACK OF JURISDICTION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.1, defendant Robert G. Roy, D.V.M., M.S., P.A., d/b/a Palm Beach Veterinary Specialists ("Dr. Roy"), moves to dismiss the *Complaint for Damages and Injunctive Relief for Violations of the Fair and Accurate Credit Transaction Act 15 U.S.C § 1681c(g)* ("*Complaint*"; ECF No. 1) filed by plaintiff Mary Anne Torongo ("Torongo").

As set forth more fully below, the *Complaint* should be dismissed because:

- The document on which Torongo bases her claims is not a "receipt" governed by the Fair and Accurate Credit Transactions Act ("FACTA"), but rather is, on its face, a "Bill for Services" not encompassed by FACTA's prohibitions; therefore, the *Complaint* should be dismissed with prejudice

- The Complaint fails to state a claim for a willful violation of FACTA because Dr. Roy's interpretation of the statute is not objectively unreasonable and there is a complete absence of case-law showing or even suggesting the "Bill for Services" must be FACTA compliant. Only a "willful" violation gives rise to the damages Torongo claims; therefore, the *Complaint* should be dismissed with leave to amend only to seek actual damages (which Torongo does not have).

- Torongo has not alleged an injury in fact as required by Article III of the Constitution and therefore lacks standing to maintain this action; consequently, the Court should dismiss the *Complaint* for lack of subject matter jurisdiction.

## I. INTRODUCTION AND BACKGROUND

Torongo has filed a putative class action complaint claiming that Dr. Roy willfully violated the FACTA subdivision of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681, *et. seq. See Complaint* at ¶ 1. FACTA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). FACTA lacks its own penalty provision; thus the general FCRA provision applies. For "willful" violations, the FCRA authorizes consumers to bring suit for "any actual damages sustained by the consumer as a result of the failure <u>or</u> damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Torongo disclaims any "actual damages" and bases her claims and those of the putative class on a claimed entitlement to statutory damages. *See Complaint* at ¶ 56.

The *Complaint* is a cookie-cutter document in which it is difficult to find many allegations specific to Dr. Roy. Torongo fails to attach the allegedly-violative receipt to her pleading; instead, the form pleading attaches portions of documents purportedly from VISA, American Express, and Mastercard, *see* ECF Nos. 1-1, 1-2, and 1-3, along with a wholly-improper and irrelevant purported Yelp excerpt of comments about Palm Beach Vetrinary Specialists, the most recent of which is dated March 5, 2014 – *i.e.*, over twenty-one months ago, *see* ECF No. 1-4.[1]

---

[1] The section entitled "Defendants' Misdeeds" from the *Complaint* should be stricken under Rule 12(f), FED. R. CIV. P., because they are "immaterial, impertinent, [and] scandalous." *See id.*; *see also Blanco GmbH N Co. KG v. Vlanco Indus. LLC*, 12-61580-CIV, 2013 WL 6511735, at *1 (S.D. Fla. Dec. 12, 2013) (Hunt, M.J.) (striking portion of plaintiff's motion that referenced alleged crimes committed by the defendant because the submission was "immaterial to the trademark infringement matters at issue" and "contain[ed] scandalous matter" that the court considered harassing). In truth, though not for consideration on this motion to dismiss, Palm Beach County Veterinary Specialists is a highly-regarded veterinary care specialist which

In the allegations even arguably specific to Dr. Roy, many of which are improperly "upon information and belief," *see Complaint* at, *e.g.*, ¶¶ 31, 39, 40, 43 & 46, Torongo identifies the basis for her claim. She contends that on August 25, 2015, she used her credit card to pay for veterinary services received from Dr. Roy and was allegedly provided with "an electronically printed receipt … [which] included the last four digits of Plaintiff's credit card and the expiration date." *See id*. at ¶ 30. Torongo does not attach the allegedly-violative "receipt" to her pleading. Moreover, showing the cookie-cutter nature of this form pleading, she subsequently clarifies that "Defendant generates and issues two receipts at the point of sale. One of the receipts Defendant generates is FACTA compliant while the second receipt is not." *See id*. at ¶ 45 (emphasis added).

The "two receipts" are not both "receipts," and the actual receipt governed by FACTA is, as Torongo admits, fully FACTA-compliant. As she alleges, Torongo was provided with two documents on August 25, 2015: (i) a credit card receipt slip for payment ("Receipt Slip") and (ii) a "Bill for Services." A copy of the Receipt Slip is attached as Exhibit **B**; a copy of the Bill for Services is attached as Exhibit **C**.[2] The Receipt Slip is a conventional credit card receipt printed on small credit card receipt paper and is fully FACTA-compliant. *See* Ex. B. Torongo's

---

provides discounted or at-cost services for Gumbo Limbo Nature Center's Sea Turtle Program in Boca Raton, the Palm Beach County Sheriff's Office K9 Unit (52 active, 19 retired), and the Florida Highway Patrol K9 Unit on a regular basis. *See* Exhibit **A**.

[2] It is well established that documents such as these are properly considered on a motion to dismiss where they are referenced in a pleading and form the basis of a claim. *See*, *e.g.*, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Obviously, the "receipt" – *i.e.*, the Bill for Services she received on August 25, 2015 (when she also received the FACTA-compliant Receipt Slip) – that Torongo claims violates FACTA is "central to her claim."

credit card numbers are truncated and the card's expiration date was omitted. *See id.* Torongo herself admits that the Receipt Slip "is FACTA compliant." *Complaint* at ¶ 45.

The Bill for Services summarizes important information relevant to the treatment provided to Jasper, Torongo's pet dog. *See* Ex. C.[3] It details which veterinarian provided the treatment, the type of medical procedures performed, and the medications provided to Jasper, the quantities provided, and the costs for each service, as well as the payment status. *See id.* In sharp contrast to the Receipt Slip, the Bill for Services is printed on regular 8.5 x 11 paper and not on two-and-a-quarter-inch-wide receipt-slip paper. *Compare* Ex. B *with* Ex. C. At the bottom of the page, the Bill for Services references the $520.54 Torongo paid on August 25, 2015, which is the amount shown on Torongo's FACTA-compliant Receipt Slip. *Compare* Bill for Services *with* Receipt Slip.

Torongo alleges Dr. Roy willfully violated FACTA because the Bill for Services allegedly contains the last four digits of Torongo's credit card number as well as the card's expiration date in the line (redacted): "Note: V/Mc xxxx xx/xx jka". *See id*. Notably, the line does not indicate whether the card used for payment is a Visa, MasterCard, or something else (*e.g.*, Amex or Discover) or what "jka" means (which are obviously not Torongo's initials).

The Bill for Services is the basis for Torongo's claim that Dr. Roy "knowingly, willfully, intentionally, and/or recklessly violated and continues to violate" or, alternatively, "negligently violated and continues to violate" the statute. *Complaint* at ¶¶ 69-70. Although Torongo seeks to recover costs, attorney's fees, and compensatory, statutory, and punitive damages, and also seeks an injunction against Dr. Roy, she expressly abjures any claim of actual injury: "This suit seeks

---

[3] In accordance with Rule 5.2, FED. R. CIV. P., the copy of the Bill for Services attached as Exhibit C is redacted to remove Torongo's personal information, including all account numbers. Dr. Roy is moving to file the un-redacted version under seal concurrently herewith.

only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto." *Id*. at ¶ 56.

## II. STANDARD OF REVIEW

Rule 8(a)(2), FED. R. CIV. P., requires that a plaintiff file a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Palacia v. Citimortgage, Inc.*, 12-81058-CIV, 2013 WL 2182012, at *1 (S.D. Fla. May 20, 2013) (Middlebrooks, J.) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In order to survive this motion, Torongo's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla–Diaz v. Kaplan Univ.,* 780 F.3d 1039, 1051 (11th Cir. 2015). Allegations that "are merely consistent with a defendant's liability, however, are not facially plausible." *Id*.

## III. ARGUMENT

### A.   FACTA DOES NOT APPLY TO THE BILL FOR SERVICES

The meaning of FACTA is a pure question of law for the Court, properly resolved on a motion to dismiss. *See*, *e.g.*, *Gonzalez v. McNary*, 980 F.2d 1418, 1420-21 (11th Cir. 1993) (affirming Rule 12(b)(6) dismissal upon resolution of statutory interpretation that plaintiff's status did not fall within the statute's plain meaning); *Dunford v. Rolly Marine Service Co.*, No. 05-60166, 2005 WL 2456217, *1 (S.D. Fla. April 11, 2005) (Dimitrouleas, J.) (granting motion to dismiss with prejudice because defendant's status did not fall within a statute's plain meaning and an amendment would be futile). To determine the scope of a statute, a court should first look to its plain language. *Moskal v. U.S.*, 498 U.S. 103, 108 (1990).

5

By its terms, the credit card truncation requirement of FACTA only applies to a "receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g). However, the word "receipt" is not defined.

When terms are left undefined, "courts often turn to dictionary definitions for guidance." *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir. 2004). In Black's Law Dictionary, "receipt" is defined as "receipt … 2. A written acknowledgment that something has been received; esp., a piece of paper or an electronic notification that one has paid for something. <keep the receipt for the gift>. — Also termed (in sense 2) *sales slip*." RECEIPT, Black's Law Dictionary (10th ed. 2014) (italics original). Under the relevant definition, a "receipt" is a written acknowledgment that something has been paid for and, importantly, is also termed a "sales slip." *Id.* A "sales slip," in turn, is defined as "[a] small piece of paper that a customer is given upon buying and paying for something." SALES SLIP, Black's Law Dictionary (10th ed. 2014). Using Black's definitions, the "receipt" here is the FACTA-compliant Receipt Slip Torongo received along with the Bill For Services.

The proper meaning of "receipt" is further elucidated by other sections of FACTA, because the meaning of a word within a statute should be interpreted consistently throughout a statute and review of other portions of a statute is the primary method of resolving a perceived ambiguity. *Penn v. City of Montgomery, Ala.*, 381 F.3d 1059, 1062 (11th Cir. 2004) ("We do not look at one word or term in isolation, but instead we look to the entire statutory text."); *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001) ("[T]he canons of construction focus on the text actually approved by Congress and made a part of our country's laws.… Canons of construction are essentially tools which help us to determine whether the meaning of a statutory provision is sufficiently plain, in light of the text of the statute as a whole, to avoid the need to consider extrinsic evidence of Congress' intent."); *Haslam v. Federated*

*Dept. Stores, Inc.,* Case No. 07-cv-61871 CIV, 2008 WL 5574762, at *3 (S.D. Fla. May 16, 2008) (Middlebrooks, J.) (citing *CBS* for canons of statutory construction). For example, in Sections 1681c(g)(3)(A) and (B) of FACTA, Congress specifically referenced "cash register[s] or other machine[s] or device[s] that electronically print[] receipts." This use of the words "cash registers" and other "devices" used by a merchant, as opposed to, for example, the broader "printer," demonstrates that Congress was only concerned with the small sales slips that are produced by point of sale terminals – *i.e.*, the FACTA-compliant Receipt Slip Torongo received.

Torongo's own *Complaint* strongly supports the proposition that the Receipt Slip is the only document governed by FACTA. Exhibit A (ECF No. 1-1) to the *Complaint* is purportedly a copy of the July 14, 2010, "VISA Best Practices for Primary Account Number Storage and Truncation." The "Best Practice" set forth governs "a transaction receipt <u>created at a point of sale (POS) terminal or an ATM[,]</u>" and reiterates that the issue is with respect to "a transaction receipt <u>created at a POS terminal</u>." *See id*. at 2 (emphasis added). Similarly, Exhibit C (ECF No. 1-3) to the *Complaint*, the document that looks to be a single page of a December 11, 2014, MasterCard document, states, "A Transaction receipt generated by an electronic Terminal … must not include the Card expiration date. In addition, <u>a Transaction receipt generated by an electronic Terminal</u> … must reflect only the last four digits of the primary account number (PAN). … The Corporation strongly recommends that if <u>an electronic POS Terminal</u> generates Merchant copies of Transaction receipts …." *See id*. at 1 (emphasis added). The industry's own reading – adopted by Torongo as part of her claims "for all purposes," *see* Rule 10(c), F<span style="font-variant:small-caps">ed</span>. R. C<span style="font-variant:small-caps">iv</span>. P. – shows the proper reading of "receipt" as used in FACTA, especially because FACTA was specifically enacted to address credit card receipts and a "POS Terminal" is precisely the "cash register or other machine or device that electronically prints receipts" discussed in Sections 1681c(g)(3)(A) and (B) of FACTA. *See O'Hara v. Luckenbach S.S. Co.,*

7

269 U.S. 364, 371 (1926) ("If the act is one passed with reference to a particular trade, business, or transaction, and words are used which everybody conversant with that trade, business, or transaction, knows and understands to have a particular meaning in it, then the words are to be construed as having that particular meaning, though it may differ from the common or ordinary meaning of the words."); *Hoffman v. Palmer*, 129 F.2d 976, 984 (2d Cir. 1942), *aff'd,* 318 U.S. 109 (1943) ("Each trade has its peculiar jargon and courts rely on that jargon when it finds its way into a statute dealing with that trade."); *Kivo v. Blumberg Exelsior, Inc.*, 982 F. Supp. 2d 217, 221 (E.D.N.Y. 2013) (applying the principle that "because Congress uses technical words or terms of art, it is proper to explain them by reference to the art [or] science to which they are appropriate" when analyzing the term "point of sale" as used in FACTA). The Receipt Slip is the document before the Court printed by an electronic POS Terminal, and is thus governed by FACTA. The Bill for Services is obviously not, and is thus not governed by FACTA.

Furthermore, Torongo's broad reading of "receipt" to include not just the Receipt Slip but also the Bill for Services is inconsistent with FACTA's purpose, and statutory purpose is yet another tool for elucidating the meaning of a word within a statute. *See*, *e.g.*, *Nat'l Wildlife Fed'n v. Marsh*, 721 F.2d 767, 778 (11th Cir. 1983) ("statutory language is to be interpreted in a way that accomplishes the obvious purpose of Congress in enacting the statute"). FACTA was intended to prevent identity theft by thwarting thieves who rummage through trash in search of receipts containing sufficient information to steal an identity. *See* 149 CONG. REC. S16675 (daily ed. Jan. 28, 2003) (statement of Rep. Feinstein) ("When a store gives a customer a receipt from a credit card purchase, only the last five digits of the credit card number will show. This prevents identity thieves from stealing credit card numbers <u>by retrieving discarded receipts</u>." (emphasis added)); *The Fair Credit Reporting Act and Issues Presented by Reauthorization of the Expiring Preemption Provisions: Hearing Before Senate Committee on Banking, Housing, and Urban*

*Affairs*, 108th Cong. 579, at 78 (2003) (statement of Sen. Schumer) (We should truncate credit card receipts . . . In other words, the receipt, <u>the part you discard</u>, does not show the whole number on there so <u>people cannot go into the garbage can, pick it up</u>, and duplicate your credit card number." (emphasis added)); *Remarks by President Bush at Signing of the Fair and Accurate Credit Transactions Act* (Dec. 4, 2003) ("[T]his law will help prevent identity theft before it occurs, by requiring merchants to delete all but the last five digits of a credit card number on store receipts . . . <u>Slips of paper that most people throw away</u> should not hold the key to their savings and financial secrets." (emphasis added)). [4] Thus, Congress was only concerned with the small slips of paper produced by point of sale terminals, which Congress recognized that people frequently throw away.[5]  Congress was not addressing in FACTA full-sized documents handed to a customer that list all the services provided – *e.g.*, the Bill for Services.

Dr. Roy provided Torongo with a Receipt Slip and also provided her with a Bill for Services. Only the Receipt Slip is governed by FACTA. The Receipt Slip is printed on small-sized receipt paper and was created by the POS terminal to show receipt of payment on her card. *See* Ex. B. Torongo admits that the Receipt Slip was FACTA compliant. *See* Compl. at ¶ 45. In contrast, the Bill of Services is not a receipt. It is printed on full-sized paper and lists the services and medications that Jasper received and for which Torongo was charged. *See* Ex. C.

---

[4] Available at: http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/text/20031204-2.html

[5] The legislative history also focuses on "credit card machines," evidencing that Congress' intent was to limit FACTA's application to the small sales slips printed when the credit card transaction is actually processed. *See* S. REP. NO. 108-31, at 35 (2003) ("The bill requires all new <u>credit card payment processing machines</u> to truncate the credit card account numbers to the last five digits on the printed receipt. (emphasis added)); 149 CONG. REC. S1669-02, S1675 (daily ed. Jan. 28, 2003) (statement of Sen. Feinstein) (The Act "would require all new <u>credit card machines</u> to truncate any credit card number printed on a customer receipt." (emphasis added));  149 CONG. REC. S134-02, S146 (daily ed. Jan. 9, 2003) ("By 18 months after enactment of this Act, all new <u>credit-card machines</u> that print receipts electronically shall not print the expiration date or more than the last five digits of the consumer's credit card number." (emphasis added)).

Given the important information contained on the Bill for Services, it is not the type of document that Congress would have implicitly sought to govern through FACTA. A devoted pet owner such as Torongo would naturally keep the Bill for Services to have a record of her pet's care and treatment, not casually throw it away. If Congress had intended that FACTA apply to all documents provided to a customer at the conclusion of a transaction, it would have made this clear, as other statutes show Congress will when necessary. For example, in statutes governing federal procurement policy, Congress specifically requires that a holder of a card must reconcile charges appearing on a purchase card statement with the "receipts and <u>other supporting documents</u>" from the transaction. *See*, *e.g.*, 41 U.S.C. § 1909(a)(3)(A) (emphasis added); *see also id.* at § 1909(a)(4) ("Any disputed purchase card charge, and any discrepancy between a <u>receipt and other supporting documentation</u> and the purchase card statement of account, is resolved in the manner prescribed in the applicable Government-wide purchase card contract entered into by the Administrator of General Services." (emphasis added)).

"[W]hen an expansive term is used, [the Court] must consider the common meaning of the term in the context of the statute." *Haslam*, 2008 WL 5574762 at *3 (citing *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000)). The common meaning of "receipt" in the FACTA context is the Receipt Slip that Torongo admits is FACTA-compliant. If Congress had wanted the truncation requirement to apply all documents a consumer could be provided at the point of sale, including Bills for Services, it would have used the broader term "supporting documentation" in FACTA, just as it has in other statutes. "[W]here Congress knows how to say something but chooses not to, its silence is controlling." *Haslam*, 2008 WL 5574762 at *3. Because Congress only used "receipt" in FACTA and its focus was on point of sale terminals, Torongo's claim that the Bill for Services is governed by FACTA is incorrect as a matter of law. Therefore, the *Complaint* should be dismissed with prejudice.

B.     **NO WILLFUL VIOLATION OF FACTA IS RAISED BY TORONGO'S CLAIMS; THEREFORE, STATUTORY DAMAGES CANNOT BE AWARDED**

Even if the Bill for Services is deemed a "receipt" under FACTA – which requires an over-broad reading of the statute – Torongo still could not sustain her claim for a "willful violation" because, as a matter of law, she cannot show that Dr. Roy's interpretation of the statute is objectively unreasonable, which she must to be entitled to statuory damages under the FCRA statutory-damages provision, § 1681n(a)(1)(A). *See Hammer v. Sam's E., Inc.*, 754 F.3d 492, 501 (8th Cir. 2014) ("a person who fails to comply with FACTA's receipt requirement does not incur liability for damages unless the violation is willful").

A willful violation cannot be based on an interpretation of FACTA that is merely erroneous; the defendant's interpretation must be "objectively unreasonable." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (interpreting the FCRA damages provision).  In determining whether an interpretation is objectively unreasonable, the court must look at whether the defendant's reading "has a foundation in the statutory text" or whether the party interpreting the statute "had the benefit of guidance from the courts of appeals or the Federal Trade Commission that might have warned it away from the view it took." *Safeco*, 551 U.S. at 69-70; *see also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009) (affirming decision that defendant did not willfully violate the FCRA because defendant's statutory interpretation was reasonable and "no judicial opinions established" that the defendant's interpretation was incorrect). Dr. Torongo's reading has a strong foundation in the statutory text, supplemented by common understanding – and, indeed, Torongo's own *Compliant*, which makes the industry's reading part of her allegations – and there is no guidance from courts or regulators to inform Dr. Roy that the Bill for Services could be a "receipt" governed by FACTA.

As the Supreme Court has held in the qualified immunity context, it takes controlling authority in the defendant's jurisdiction or a "consensus of cases of persuasive authority" to make a statutory interpretation objectively unreasonable. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Courts have applied a similar approach under FACTA, holding that a defendant's interpretation is not objectively unreasonable "absent clear guidance from the Supreme Court or the [controlling] Circuit." *Kivo*, 2013 WL 6064229 at *7 (emphasizing that a defendant's interpretation of FACTA need not be correct to be objectively reasonable). If the "statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Safeco*, 551 U.S. at 70 n.20; *see also Levine*, 554 F.3d at 1318*; Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3d Cir. 2012) ("A defendant's conduct [under the FCRA] is reckless only if it was objectively unreasonable in light of legal rules that were clearly established at the time.").

No controlling authority or consensus of cases exists to warn Dr. Roy that the Bill for Services is governed by FACTA; to the contrary, to the extent there is any guidance, it supports Dr. Roy's reasonable interpretation that the Bill for Services is not governed by FACTA. *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), is instructive. In *Redman*, the court found that the defendant's FACTA violation was not willful because it "consisted of a permissible interpretation of an ambiguous statute." The defendant had printed the expiration month of the credit card, but not the expiration year. *Id.* at 639. The court reasoned that the violation was not willful because the term "expiration date" is not defined in the statute and the defendant's interpretation that only a full date including month and year violated FACTA was a fair reading of the statute. *Id.* at 640; *see also King v. MovieTickets.com, Inc.*, 555 F. Supp. 2d 1339, 1342 (S.D. Fla. 2008) (dismissing complaint with prejudice because plaintiff could not

12

allege a willful violation when the interpretation that FACTA applied to electronic receipts was "not clear from the statute"); *Andrade v. Desert Champions LLC*, No. C-15-1394 EMC, 2015 WL 4150695, at *5 (N.D. Cal. 2015) (finding defendant did not willfully violate FACTA by printing an expiration date on a receipt mailed to the plaintiff as opposed to printed in a store because the term "point of sale" was not defined in the statute).

In *Hammer*, the Seventh Circuit refused to consider the evidence proffered to show that the defendant willfully violated FACTA because the court found that the defendant's statutory interpretation was not objectively unreasonable as a matter of law. *See* 754 F.3d at 503 n.5. The defendant printed the plaintiff's entire membership club number on its receipts, which was identical to the plaintiff's credit card number. *Id.* at 496. Even though printing a full credit card number on a receipt would appear to be exactly the type of issue of Congressional concern giving rise to FACTA, the *Hammer* court held that it was not objectively unreasonable for the defendant to believe that FACTA only applied to credit card numbers "*so labeled*," but that other numbers on the receipt did not have to be truncated. *Id.* at 502 (italics original).

As shown above, Dr. Roy's interpretation of the statute has a sufficient foundation in the statutory text. Given that the term "receipt" is undefined, Dr. Roy's assumption that the Bill for Services was not a receipt and thus not governed by FACTA is a fair and reasonable reading of the statute. The Bill for Services is not labeled a receipt and is much larger than a standard credit card receipt slip. Further, the Bill for Services contains much more information than the Receipt Slip. Even though the two documents were presented to Torongo simultaneously, it was not objectively unreasonable for Dr. Roy to understand that the Receipt Slip is the "receipt" for FACTA purposes, but that the Bill for Services is not governed by the statute. Moreover, no case law or regulatory guidance has analyzed whether such a Bill for Services constitutes a "receipt" for FACTA purposes. In fact, the Federal Trade Commission's ("FTC") alert reminding

businesses of FACTA's truncation requirement, entitled "Slip Showing? Federal Law Requires All Business to Truncate Credit Card Information on Receipts," cautions that there are "important reasons to make sure your slips" are compliant. [6] *Id*. (emphasis added). The FTC's focus on the word "slip" further demonstrates that Dr. Roy's interpretation that the full-page Bill for Services is not governed by FACTA is not objectively unreasonable. Further, the attachments to Torongo's own *Compliant* establish that Dr. Roy's interpretation is clearly more than reasonable, as both the purported VISA document (ECF No. 1-1) and the purported MasterCard document (ECF No. 1-3) focus on receipts printed by the electronic "point of sale (POS)" terminals – *i.e.*, here, the Receipt Slip. *See* discussion *supra*; *see also* ECF No. 1-1 at pg. 3; ECF No. 1-3 at pg. 2.[7]

As Torongo admits, Dr. Roy complied with his reasonable interpretation of FACTA's text and made sure that the Receipt Slip printed from his POS terminal was FACTA compliant. Her contention that the Bill For Services was also governed by FACTA, whether or not correct (it is not), cannot support her contention that Dr. Roy violated FACTA "willful[ly]," as she must for her statutory-damage claim, because she cannot show that Dr. Roy's interpretation of FACTA's requirements was objectively unreasonable. This failing, properly decided on a motion to dismiss because it is an issue of law, requires dismissal of the *Complaint*, with leave to amend only to plead a claim of actual injury (which Torongo can not, and certainly did not, plead).

---

[6] Available at: https://www.ftc.gov/tips-advice/business-center/guidance/slip-showing-federal-law-requires-all-businesses-truncate

[7] In addition, under *Hammer*'s analysis of FACTA, even aside from the fact that it is not a "receipt," because the credit card information printed on the Bill for Services is not only not the full credit card number but lacks identification of the type of credit card, Dr. Roy's interpretation that Bill for Services is not governed by FACTA is not objectively unreasonable as a matter of law. *See* 754 F.3d at 502.

### C. THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER TORONGO'S NO-ACTUAL-INJURY COMPLAINT[8]

#### 1. Torongo Lacks Standing to Maintain this Action Because She Disclaims an Injury in Fact

Article III of the Constitution confines the jurisdiction of federal courts to "cases and controversies." *See* U.S. Const. art. III, § 2. The *Complaint* does not allege that Torongo has suffered an injury in fact that raises a such a "case or controversy." Torongo, therefore, does not have standing and the Court should dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (federal courts lack subject matter jurisdiction over any case of controversy in which the plaintiff lacks the "irreducible constitutional minimum of standing."); *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) (a court should not consider the merits of a claim until "the person seeking to invoke the jurisdiction of the court" has "establish[ed] the requisite standing to sue.").

To establish standing, a plaintiff must plead and prove "injury in fact." An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.") (emphasis added). Further, "[i]t is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997);

---

[8] Although the Court may have implicitly rejected this argument in the *Order Denying Motion to Stay* (ECF No. 30), Dr. Roy sets it forth here in more detail for a full discussion. In addition, it is possible that the Supreme Court will issue the decision in *Spokeo, Inc. v. Robins*, No. 13-1339 (cert. granted May 7, 2014), prior the reply on this motion being due. As noted in the stay briefing, even if the Supreme Court does not rule that claims such as Torongo's must fail for lack of standing, the Court could well provide clarification of the pleading standard for asserting a "willful" violation. *See, e.g., Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2522 (2015) (establishing heightened pleading standard for certain Fair Housing Act claims).

*Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 435 (5th Cir. 1985) ("injury without damage creates no right to compensation."). Although, in some cases, an allegation of future injury may be enough to confer standing, the threat must be "certainly impending" instead of speculative. *Whitmore*, 495 U.S. at 158.

Torongo not only fails to allege an injury in fact, she expressly abjures any claim of actual injury: "This suit seeks only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto." *Complaint* at ¶ 56. Therefore, she has no standing and the *Complaint* should be dismissed.

To the extent that Torongo were to claim that her passing reference to injury qualifies to give her standing, she pleads no actual injury with the specificity required under the *Twombly*/*Iqbal* standard. She only hints at actual injury by asserting that, subsequent to her August 25, 2015, transaction, she "received a fraudulent activity alert on her account…. [and] [u]pon information and belief, the fraudulent activity may have been a result of the August 25, 2015 receipt printed by Defendant." *See id.* at ¶ 31. The "account" is not identified, the alert is not specified, and the activity is not specified. Indeed, Torongo carefully omits pleading whether any fraudulent activity actually occurred. Such an unelaborated allegation falls far short of adequately pleading a claim of actual injury that is plausible on its face. *See, e.g.*, *Lopez v. Garcia-Montes*, No. 08-21656-CIV, 2008 WL 2782738, at *2 (S.D. Fla. July 16, 2008) (Moreno, J.) ("a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do'") (quoting *Twombly*, 550 U.S. at 570). Torongo's type of less-than-bare-bones, conjectural allegation is insufficient to plead anything, much less the standing required by Article III. Because she fails to plead an injury in fact, Torongo does not have standing. Consequently, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

### 2. Because Torongo Lacks Standing Individually, She Also Lacks Standing to Represent the Purported Class

A named plaintiff must have standing in order to represent a class. *See Prado-Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000); *Colomar v. Mercy Hospital, Inc.,* 242 F.R.D. 671, 675 (S.D. Fla. 2007) (Seitz, J.) (citing *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003)). Furthermore, "if none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Jones v. TT of Longwood, Inc.*, 06-651, 2007 WL 2298020, at *8 (M.D. Fla. Aug. 7, 2007) ("No class action may proceed unless there is a named plaintiff with standing to represent the class."). Consequently, because Torongo does not have standing to maintain this action, it necessarily follows that Torongo does not have standing to represent the purported class.

### III. Conclusion

WHEREFORE, for the reasons set forth above, defendant Robert G. Roy, D.V.M., M.S., P.A., d/b/a Palm Beach Veterinary Specialists, respectfully requests that the Court dismiss this action in its entirety with prejudice (because FACTA does not apply to the Bill for Services) or without prejudice, but with leave to amend only to plead actual injury (because, even if FACTA applies to the Bill for Services, Dr. Roy's violation cannot be willful), and grant Dr. Roy such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 28, 2015

**AKERMAN LLP**
One Southeast Third Avenue –Suite 2500
Miami, FL  33131-1714
Tel: 305-374-5600
Fax:  305-374-5095

By:  /s/ Jonathan D. Lamet
    CHRISTOPHER S. CARVER, ESQ.
    Florida Bar No. 993580
    christopher.carver@akerman.com
    ARI H. GERSTIN, ESQ.
    Florida Bar No.:  0839671
    ari.gerstin@akerman.com
    JONATHAN D. LAMET, ESQ.
    Florida Bar No. 106059
    jonathan.lamet@akerman.com

*and*

   JASON S. OLETSKY, ESQ.
   Florida Bar No.:  0009301
   jason.oletsky@akerman.com
   Las Olas Centre II – Suite 1600
   350 East Las Olas Boulevard
   Fort Lauderdale, FL  33301-2999
   Tel. 954-463-2700
   Fax:  954-463-2224

*Counsel for Defendant Robert G. Roy, D.V.M., M.S., P.A., a Florida professional association d/b/a Palm Beach Veterinary Specialists*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of *Defendant's Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction* were served on December 28, 2015, on all counsel or parties of record on the following Service List in the manner indicated.

  /s/ Jonathan D. Lamet

<u>Service List</u>

*Torongo v. Roy*
Case No. 9:15-cv-81490-DMM
<u>U.S. District Court, Southern District of Florida</u>

| **Counsel for Plaintiff** | **Counsel for Defendant Robert G. Roy, D.V.M., M.S., P.A., d/b/a Palm Beach Veterinary Specialists** |
|---|---|
| (service by CM/ECF) | (service by CM/ECF) |
| Christopher W. Legg, Esq.<br>3837 Hollywood Blvd., Ste. B<br>Hollywood, FL 33021<br>Tel: 954-962-2333<br>Fax: 954-927-2451<br>ChrisLeggLaw@gmail.com | Christopher S. Carver, Esq.<br>Ari H. Gerstin, Esq.<br>Jonathan D. Lamet, Esq.<br>**AKERMAN LLP**<br>One S.E. Third Avenue – 25th Floor<br>Miami, FL 33131-1714<br>Tel.: 305-374-5600<br>Fax: 305-374-5095<br>christopher.carver@akerman.com<br>ari.gerstin@akerman.com |
| Steven R. Jaffe, Esq.<br>Seth Lehrman, Esq.<br>Farmer, Jaffe, Weissing,<br>   Edwards, Fistos & Lehrman, P.L.<br>425 North Andrews Avenue – Suite 2<br>Ft. Lauderdale, FL 33301<br>Tel. 954-524-2820<br>steve@pathtojustice.com<br>seth@pathtojustice.com | and<br><br>Jason S. Oletsky, Esq.<br>**AKERMAN LLP**<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, FL  33301-2999<br>Tel.:  954-463-2700<br>Fax:  954-463-2224<br>jason.oletsky@akerman.com |