UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:15-cv-81490-DMM

MARY ANNE TORONGO, on behalf of
herself and others similarly situated,

    Plaintiff,

v.

ROBERT G. ROY, D.V.M., M.S., P.A., a
Florida professional association d/b/a PALM
BEACH VETERINARY SPECIALISTS,

    Defendant.
_____/

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
FOR RELIEF AND FOR LACK OF JURISDICTION**

Defendant Dr. Roy replies to *Plaintiff's Response in Opposition (*etc.*)* ("*Opposition*"; ECF No. 35) in further support of the *Motion to Dismiss (*etc.*)* ("*Motion*"; ECF No. 31). The *Opposition* filed by plaintiff Mary Anne Torongo provides no grounds for denial of the *Motion*. She concedes that her claims are based on the Bill for Services filed with the *Motion*, but contends that it too – in addition to the regular, FACTA-compliant credit card Receipt Slip she received when she paid for the veterinary services rendered by Dr. Roy – is encompassed by FACTA's restrictions. If Torongo's argument were correct, every piece of paper a customer receives from a business would be governed by FACTA. It is not; therefore, the *Motion* should be granted and the *Complaint* should be dismissed.

**I. INTRODUCTION AND BACKGROUND**

For Torongo to state a claim in her one-count FACTA complaint, she must convince the Court that the Bill for Services she received from Dr. Roy is governed by FACTA. The *Motion* establishes as a matter of law the Bill for Services is not governed by FACTA and, even if it is,

no "willful" violation can be pled by Torongo – a showing based, in part, upon the documents Torongo herself attached to her pleading. *See Motion* at 7-8, 11, 14 (which Torongo's arguments nowhere address). In response, Torongo contends that FACTA is a remedial statute which should be read broadly, that she has sufficiently pled a willful violation by, in essence, merely using the words "willful" and "reckless," that long-stale, irrelevant Yelp excerpts are properly part of her claim, and that she has standing. *See*, *generally*, *Opposition*. None of these arguments suffices to defeat the *Motion*.

Most notable in the *Opposition* is what it wholly fails to provide to the Court: A single case that addresses facts akin to those before the Court, where a FACTA plaintiff was provided with a FACTA-compliant point-of-sale receipt and another document – here, the Bill for Services – that the plaintiff contends violated FACTA. Not one of the FACTA cases cited by Torongo touches on this factual scenario, which means, pursuant to the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), Torongo fails to and cannot plead a "willful" violation of FACTA. *See Motion* at 11-14; *see also infra* at 5-9.[1]

---

[1] Of the FACTA cases Torongo cites, *see Opposition* at 2, 4-7 & 11-14, most expressly address credit slips from point-of-sale machines. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) (willfulness finding based on prior state opinion explicitly stated that that issues were with "cash registers or machines" printing the receipts. *See Ferron v. RadioShack Corp.*, 886 N.E.2d 286, 292 (Ohio Ct. App. 2008)); *Muransky v. Godiva Chocolatier, Inc.*, No. 15-cv-60716 (S.D. Fla. Sept. 2, 2015), *slip op.* at 2 (the receipt was produced by a "TOSHIBA SurePOS retail system"); *Lavery v. RadioShack Corp.*, No. 13-CV-05818, 2014 WL 2819037, at *1 (N.D. Ill. June 23, 2014) (the same RadioShack receipts at issue in *Redman*); *Steinberg v. Stitch & Craft, Inc.*, No. 09-60660, 2009 WL 2589142, at *1 (S.D. Fla. Aug. 18, 2009) (Huck, J.) (no dispute that the receipt was governed by FACTA); *Rosenthal v. Longchamp Coral Gables LLC*, No. 08-21757-CIV, 2009 WL 1854846, at *1 (S.D. Fla. June 29, 2009) (Moreno, J.) ("electronically generated, point of sale receipt"); *In re TJX Cos., Inc.*, No. 07-MD-1853-KHV, 2008 WL 2020375, at *1 (D. Kan. May 9, 2008) (receipts printed at "registers"). Three are not quite as clear, but none disputes that the receipt at issue was governed by FACTA: *Hedlund v. Hooters of Houston*, No. 2:08-CV-45, 2008 U.S. Dist. LEXIS 38926 at *2 (N.D. Tex. May 13, 2008) ("a credit card receipt from Hooters"); *Buechler v. Keyco, Inc.*, No. CIV. WDQ-09-2948, 2010 WL 1664226, at *1 (D. Md. April 22, 2010) (restaurant credit

Lacking any on-point legal authority, Torongo argues that Dr. Roy's alleged violation of FACTA through providing a FACTA-compliant Receipt Slip and the Bill for Services was either "knowing" or "reckless in the extreme." *Opposition* at 11, 14 n.3.  In so doing, Torongo shows why her expansive view of FACTA – and her pleading – must fail:

> In this case, PBVS's [*i.e.*, Dr. Roy's] conduct constitutes recklessness in the extreme. PBVS's receipts contain a large amount of sensitive personal information. In addition to the partially redacted credit card number and plainly visible expiration date, PBVS's receipts include the <u>consumer's name</u>, <u>home address</u>, and <u>telephone number</u>. Armed with one of these receipts, an identity thief can place a simple phone call to the victim and posing as a PBVS representative, bolstering his credibility by reciting all of the details of the victim's visit to PBVS, and exploiting the patient's trust to get the missing digits from the customer's credit card.

*Id.* at 14 n.3 (emphasis added). But FACTA does not prohibit having this supposedly "sensitive personal information" on <u>a credit card receipt</u>; it only requires truncation of certain credit card numbers. *See* 15 U.S.C. § 1681c(g)(1) ("no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction"). And for good reason: if Congress through FACTA prohibited putting such information on any document provided to a customer, then virtually every bill for services – and a near-infinite number of other written communications businesses make to consumers – would be potentially subject to the massive penalty provisions created by the FCRA. Congress did not make FACTA so wildly expansive, Torongo's arguments fail, and the *Motion* should be granted.

## II. TORONGO CANNOT DEFEAT THE *MOTION* SIMPLY BY ARGUING THAT THE BILL FOR SERVICES IS A "RECEIPT" AND "RECEIPTS ARE GOVERNED BY FACTA"

Torongo's primary argument in the *Opposition* is that because FACTA uses the word "receipt" and the Bill for Services meets one dictionary definition of "receipt," she has pled

---

card receipt); *Dover v. Shoe Show, Inc.*, No. 12-694, 2013 U.S. Dist. LEXIS 59418 at *7 (W.D. Pa. Mar. 19, 2013) (magistrate's report and recommendation addressing a credit card receipt).

3

enough to survive a motion to dismiss. *See Opposition* at 4-6. However, as this Court's decision in *Haslam v. Federated Department Stores, Inc.,* Case No. 07-cv-61871 CIV, 2008 WL 5574762 (S.D. Fla. May 16, 2008) (Middlebrooks, J.), shows, it is not that simple. Just as FACTA does not define "print" – the issue in *Haslam*, *see id*., at *3 – FACTA also does not define "receipt." Accordingly, the Court must apply the traditional rules of statutory construction to glean the meaning of "receipt" as it should be understood in FACTA. *See Motion* at 5-10; *Haslam*, 2008 WL 5574762, at *3-4. Those rules lead to the conclusion that "receipt" in FACTA does not encompass the Bill for Services. *See id*.

Torongo's focus on the issue of the different size of the Receipt Slip as compared to the Bill for Services, *Opposition* at 5-6, misses the point. It is not the size of the document *per se*, but the fact that the two documents are so wildly different such that Congress could only have intended one to be governed by FACTA: the Receipt Slip printed from "cash register[s] or other machine[s] or device[s] that electronically print[] receipts." *See* §§ 1681c(g)(3)(A) & (B) of FACTA. One document, the Receipt Slip, has only Torongo's name on it and a properly-truncated credit card number. *See Motion*, Ex. B (ECF No. 31-2). The other, the Bill For Services, has a variety of information identifying Torongo, the services provided to her dog Jasper, the charges for the various services, *etc*. – all of which information is very useful to a pet owner, and not the type of document a customer would be likely to discard casually (as opposed to a credit card receipt). *See id*., Ex. C (ECF No. 31-3).

In sum, the Court's conclusion in *Haslam* with respect to "print" should guide its conclusion with respect to "receipt": "Considered in context, the word 'print' must be construed to mean a paper receipt, <u>printed electronically by a 'cash register or other machine or device' at the point of sale</u>." 2008 WL 5574762, *4 (emphasis added). The Court's description applies perfectly to the FACTA-compliant Receipt Slip Torongo received, and the Court's recognition

4

that "point of sale" receipts were the focus of FACTA accords with the credit card industry's understanding – as demonstrated by Torongo's own pleading. *See Complaint*, Ex. A (ECF No. 1-1), "VISA Best Practices for Primary Account Number Storage and Truncation" at 2 (focusing on "a transaction receipt" that is "created at a point of sale (POS) terminal or an ATM" and "created at a POS terminal") (emphasis added); *id*. Ex. C (ECF No. 1-3) at 1 (the MasterCard document which addressing the truncation requirement as applying to "a Transaction receipt generated by an electronic Terminal" or "an electronic POS Terminal") (emphasis added).

The Receipt Slip is exactly the type of document commonly "generated by … an electronic POS Terminal"; even Torongo does not contend that the Bill for Services fits within that description. The Receipt Slip is governed by FACTA; the Bill for Services is not. Therefore, the *Motion* should be granted, with prejudice.

### III. TORONGO CANNOT DEFEAT THE *MOTION* BY ARGUING THAT PLEADING THE WORDS "WILLFUL" OR "RECKLESS" ALONE SATISFIES HER PLEADING BURDEN

In the event the Court decides that the Receipt Slip may be within the ambit of FACTA, the Motion should still be granted, because Torongo fails to plead adequately the necessary "willful" violation she needs for her claim to statutory damages. "[I]n considering a motion to dismiss, a court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions." *Jackson v. BellSouth Telecommunications, Inc.*, 181 F. Supp. 2d 1345, 1353 (S.D. Fla. 2001) (Middlebrooks, J.) (internal quotation omitted), *aff'd*, 372 F.3d 1250 (11th Cir. 2004). In affirming this Court's decision in *Jackson*, the Eleventh Circuit reiterated the point, stating, "'Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'" 372 F.3d at 1262 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). *See also In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1335 (S.D. Fla. 1999) (Middlebrooks, J.) ("The Court should ignore those allegations that contain no more than opinions or legal conclusions").

5

Torongo's argument that Dr. Roy's alleged violation was "knowing *or* reckless," *Opposition* at 3 (italics in original), which parallels her pleading that the alleged violation was "willful and/or reckless," *see Complaint* at ¶ 33, is exactly the type of "legal conclusions masquerading as factual conclusions" this Court properly rejects.[2] Torongo recognizes that the Supreme Court's decision in *Safeco* hamstrings her claims, but seeks to avoid it by contending she adequately pled that Dr. Roy "knew" of FACTA's requirements but violated them anyway or, at minimum, that he was "reckless" in issuing the Bill for Services. *See Opposition* at 11-15.

Torongo's "knowing" argument fails because it is not enough just to plead that Dr. Roy "knew" of FACTA, but she must also plead (and she cannot) that Dr. Roy knew that the Bill for Services is governed by FACTA. "Merely alleging that a defendant should be aware of a statute and fails to comply with it, as [Torongo] ha[s] done here, is insufficient to state a claim for willfulness." *Komorowski v. All-American Indoor Sports, Inc.*, No. 13-2177-SAC, 2013 WL 4766800, *3 (D. Kan. Sept. 4, 2013). Similarly, in *Crupar-Weinman v. Paris Baugette America, Inc.*, No. 13 Civ. 7013(JSR), 2014 WL 2990110 (S.D. N.Y. June 30, 2014), the court pointed out that "the fact that defendant changed its credit card receipt to partially comply with FACTA's requirements renders implausible the claim that defendant was attempting to willfully evade FACTA's restrictions." *Id*. at *4. *See also Katz v. Donna Karan Int'l, Inc.*, No. 14 Civ.

---

[2] The Court should disregard Torongo's statement that Dr. Roy "promised Plaintiff's credit card network that it would comply with FACTA's credit card expiration date redaction requirement," *id*., because that allegation is nowhere found in the *Complaint* and thus not properly considered. *See, e.g., Dokumaci v. MAF Collection Servs.*, No. 8:09-cv-02488-T-24-TGW, 2010 WL 2560024, at *2 (M.D. Fla. 2010) ("The Federal Rules of Civil Procedure require that a plaintiff place the necessary facts to support a claim in a pleading, not in subsequent motions or responses."); *Bruhl v. Price Waterhousecoopers Intern'l*, No. 03-cv-23044, 2007 WL 997362, at *4 (S.D. Fla. 2007) (Marra, J.) ("The Plaintiffs cannot supplant the allegations of the SAC with new arguments set forth in their response to a motion to dismiss."). Ironically, however, the statement highlights the fundamental flaw in Torongo's pleading: the Bill for Services does not even identify what credit card Torongo used to pay for Jasper's care. *See* ECF No. 31-3 (stating only "Note: V/Mc" but not identifying the credit card network used).

6

740(PAC), 2015 WL 405506, at *2 (S.D. N.Y. Jan. 30, 2015) (granting motion to dismiss because "there are no factual allegations supporting a plausible inference that Defendants knew their conduct violated the truncation requirement or that Defendants consciously chose to violate FACTA"); *Crupar-Weinman v. Paris Baugette America, Inc.*, 41 F. Supp. 3d 411, 413 (S.D. N.Y. 2014) (denying reconsideration because "the allegations in the Complaint show, at best, that defendant knew of the statute and acted carelessly in not complying with it").

In short, "knowing" about FACTA is not enough to satisfy *Safeco*'s requirements for pleading a "willful" violation adequately – a point even more true here, where there is no case finding a defendant who prints a FACTA-compliant point-of-sale receipt and a Bill for Services violated FACTA. Torongo received two documents, one she admits complies with FACTA and one she argues is governed by FACTA, but none of the cases cited by Torongo do anything more than support the argument that in a single-credit-slip case, her allegations might pass muster.[3] This is not such a case, and her claim that Dr. Roy "knowingly" violated FACTA claim fails.

Torongo's fallback "reckless" argument, *Opposition*, at 13-14, likewise fails. Torongo has not (and cannot) meet her pleading burden because she has not even plead – and cannot

---

[3] The fact that Torongo cites first to *Hall v. Burger King Corp.*, 912 F. Supp. 1509 (S.D. Fla. 1995) (Kehoe, J.), in arguing that she sufficiently alleges that Dr. Roy "knowingly violated" FACTA, *see Opposition* at 11, highlights the lack of legal authority supporting her position. *Hall* is a pre-*Twombly/Iqubal* summary judgment case having nothing to do with FACTA. Furthermore, using *Hall* to support the argument that Dr. Roy "knows the terms of the contracts it signs" with credit card companies, *Opposition* at *id.*, shows the degree to which Torongo is grasping at straws to support her attempt to plead that Dr. Roy knowingly violated FACTA by providing her with the Bill for Services. None of Torongo's FACTA cases, *see Opposition* at 12-13, is any more helpful on the "knowingly" issue on these facts. As noted in footnote 1 *supra*, *Dover* is a magistrate's recommendation addressing a credit card receipt, there was no dispute that FACTA applied in *Steinberg*, *Muransky* is a single point-of-sale credit slip case, *Lavery* is another RadioShack case, and *In re TJX Cos.* addresses the defendants' alleged "refus[al] to program their registers." Again, Torongo has no authority to support her argument that a consumer who has received a FACTA-compliant receipt and a Bill for Services can state a claim.

prove – what the Eleventh Circuit has held she must prove for a claim of willful violation of FACTA based on recklessness:

> To prove a reckless violation, a consumer must establish that the action of the [defendant] 'is not only a violation under a reasonable reading of the statute's terms, but shows <u>that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless</u>.' [*Safeco*, 127 S.Ct.] at 2215. An interpretation that favors the agency must be 'objectively unreasonable' under either the text of the Act or 'guidance from the courts of appeals or the Federal Trade Commission that might have warned [the defendant] away from the view it took.' *Id.* at 2215, 2216."

*Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009) (emphasis added). Furthermore, as explained in *Fuges v. Southwest Financial Services, Ltd.*, 707 F.3d 241 (7th Cir. 2012), a defendant

> does not lose the potential protection of the 'reasonable interpretation' defense, even if it never actually interpreted FCRA prior to the commencement of the lawsuit. Safeco requires only that 'the company's reading of the statute *is* objectively reasonable,' *Safeco*, 551 U.S. at 70 n. 20, 127 S.Ct. 2201 (emphasis added), and that the interpretation that would allow the conduct in question is 'an interpretation that could reasonably have found support in the courts,' *id*. Safeco does not require that the defendant actually have made such an interpretation at any particular point in time.

*Id*. at 251. In other words, *Levine* shows that Torongo cannot simply plead "reckless" and no more to state a claim and *Fuges* underscores that the Supreme Court in *Safeco* set a standard that Torongo cannot meet, because interpreting FACTA as not encompassing the Bill for Services "*is* objectively reasonable."

Moreover, and dispositive of Torongo's claim of "willful" violation based on "recklessness," Torongo's fallback argument that "one of the main purposes of FACTA was to prevent identity theft" and, therefore, her reading of "receipt" must govern the analysis, *Opposition* at 6, fails as a matter of law. In *Levine*, the Eleventh Circuit rejected exactly this "main purpose" argument:

> [U]nder *Safeco* <u>there is no underlying purpose criterion to determine whether an interpretation of the Act is objectively reasonable</u>. What matters under *Safeco* is

8

the text of the Act and authoritative interpretations of that text. *Id.* at 2215-16. **A [defendant] does not recklessly violate the Act when it acts in accord with an objectively reasonable interpretation of the Act**.

554 F.3d at 1319 (all emphasis added).

"[T]he court is not required to accept the plaintiff's legal conclusions," *Grady v. Baker*, 404 F. App'x. 450, 452 (11th Cir. 2010), but that is all Torongo has presented to the Court to plead her claim that Dr. Roy "willfully" violated FACTA. No case shows that Dr. Roy's providing a FACTA-compliant Receipt Slip to Torongo along with a Bill for Services purportedly containing more information permitted by FACTA's provisions was not objectively reasonable, no regulatory guidance provides otherwise, and the partial merchant guidance attached to Torongo's own pleading demonstrates that FACTA's focus is electronic point-of-sale terminal receipts – *e.g.*, the Receipt Slip. Therefore, as a matter of law, the *Complaint* should be dismissed because Torongo does not (and cannot) adequately plead that Dr. Roy's alleged violation of FACTA was "willful," as she must to state her claim.

### IV. THE PURPORTED YELP EXCERPTS AND RELATED PORTIONS OF THE COMPLAINT SHOULD BE STRICKEN

Torongo devotes nearly a page of the *Opposition* to a footnote in the *Motion* that points out that the section entitled "Defendant's Misdeeds" in the Complaint should be stricken because it is interwoven with improper – and untrue – allegations regarding Dr. Roy's business practices, which have nothing to do with Torongo's FACTA claims. *See Opposition* at 15-16; *Motion* at 2 & n.1; *Complaint* at 7-9. Torongo buttresses her assault on Dr. Roy by attaching a wholly-irrelevant set of nearly two-year-old purported Yelp excerpts. *See Complaint* Ex. D (ECF No. 1-4). Review of those excerpts and that section demonstrates conclusively that Dr. Roy's "billing practices" mischaracterized there have nothing to do with Torongo's FACTA claim. Indeed, that aspect of the *Complaint* makes it fall within the ambit of the FCRA's attorney's fees provision, 15 U.S.C. § 1681n(c), which provides, "Upon a finding by the court that an unsuccessful

9

pleading … was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees[.]" Those portions of Torongo's pleading are nothing more than "for purposes of harassment"; at minimum, they should be stricken.

### V. WHETHER TORONGO HAS STANDING WILL BE DECIDED BY THE SUPREME COURT IN *SPOKEO*, BUT SHE FAILED TO PLEAD ACTUAL INJURY

As the Court is well aware, the Supreme Court is presently deciding whether no-actual-injury plaintiffs such as Torongo have standing. *See Motion* at 15-17. Torongo spends much effort on the bare standing question, *see Opposition* at 16-17; it is fully briefed and Dr. Roy sees no need to add to his arguments in the *Motion*. However, Torongo proceeds to claim that she does, in fact, have "actual injury," claiming that, "[a]s with all merchants, a percentage of the monies Plaintiff paid to PBVS for the veterinary services rendered are used to protect her personal information[]" and that "once Plaintiff became aware of the potential for identity theft or credit card fraud from Defendant's exposure of her credit card information on her receipt, she was forced to take steps to prevent it from falling into the hands of a potential identity thief." *Opposition* at 18. These allegations are <u>not</u> pled in her *Complaint*, which expressly seeks only "statutory damages" and eschews damages for "personal injury and claims related thereto," *id*. at ¶ 56, and merely alleges that that a "fraudulent alert" on her credit card account "<u>may have been</u> a result of the August 25, 2015 receipt," *id*. ¶ 31 (emphasis added).

### III. CONCLUSION

WHEREFORE, for the reasons set forth in the *Motion* and above, Dr. Roy respectfully requests that the Court dismiss this action and grant Dr. Roy such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: January 25, 2016 | **AKERMAN LLP**<br>One Southeast Third Avenue –Suite 2500<br>Miami, FL  33131-1714<br>Tel: 305-374-5600<br>Fax:  305-374-5095<br><br>By:  /s/ Jonathan D. Lamet<br>     CHRISTOPHER S. CARVER, ESQ.<br>     Florida Bar No. 993580<br>     christopher.carver@akerman.com<br>     ARI H. GERSTIN, ESQ.<br>     Florida Bar No.: 0839671<br>     ari.gerstin@akerman.com<br>     JONATHAN D. LAMET, ESQ.<br>     Florida Bar No. 106059<br>     jonathan.lamet@akerman.com<br><br>*and*<br><br>     JASON S. OLETSKY, ESQ.<br>     Florida Bar No.: 0009301<br>     jason.oletsky@akerman.com<br>     Las Olas Centre II – Suite 1600<br>     350 East Las Olas Boulevard<br>     Fort Lauderdale, FL  33301-2999<br>     Tel. 954-463-2700<br>     Fax:  954-463-2224<br><br>*Counsel for Defendant Robert G. Roy, D.V.M., M.S., P.A., a Florida professional association d/b/a Palm Beach Veterinary Specialists* |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of this *Reply in Support of Defendant's Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction* were served on January 25, 2016, on all counsel or parties of record on the following Service List in the manner indicated.

     /s/ Jonathan D. Lamet

11

<u>Service List</u>

*Torongo v. Roy*
Case No. 9:15-cv-81490-DMM
<u>U.S. District Court, Southern District of Florida</u>

**Counsel for Plaintiff**
(service by CM/ECF)

Christopher W. Legg, Esq.
3837 Hollywood Blvd., Ste. B
Hollywood, FL 33021
Tel: 954-962-2333
Fax: 954-927-2451
ChrisLeggLaw@gmail.com

Steven R. Jaffe, Esq.
Seth Lehrman, Esq.
Farmer, Jaffe, Weissing,
   Edwards, Fistos & Lehrman, P.L.
425 North Andrews Avenue – Suite 2
Ft. Lauderdale, FL 33301
Tel. 954-524-2820
steve@pathtojustice.com
seth@pathtojustice.com

**Counsel for Defendant Robert G. Roy, D.V.M., M.S., P.A., d/b/a Palm Beach Veterinary Specialists**
(service by CM/ECF)

Christopher S. Carver, Esq.
Ari H. Gerstin, Esq.
Jonathan D. Lamet, Esq.
**AKERMAN LLP**
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095
christopher.carver@akerman.com
ari.gerstin@akerman.com

and

Jason S. Oletsky, Esq.
**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2999
Tel.:  954-463-2700
Fax:  954-463-2224
jason.oletsky@akerman.com